IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 5:05-CR-0438-AA-2 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Ann Aldrich |
| | ) | |
| PEREZ WILLIAMS, | ) | Magistrate Judge David S. Perelman |
| | ) | |
| Defendant. | ) | |
| | ) | MEMORANDUM AND ORDER |
| | ) | |
| | ) | |

This is a multi-defendant criminal case, in which the United States has charged defendant Perez Williams ("Williams") with conspiracy to possess with intent to distribute cocaine and crack cocaine. The government's core allegation is that Williams was to procure cocaine from various sources, which the other defendants would then distribute in the Canton, Ohio area. Williams moved to suppress evidence obtained during a search of the residence at 1107 Hoover Place, N.W. in Canton, Ohio [Docket No. 37]. The motion to suppress was referred to Magistrate Judge David S. Perelman [Docket No. 41], who submitted a Report and Recommended Decision ("R&R") [Docket No. 43] recommending that the motion be denied. Williams has filed an objection to the R&R [Docket No. 50]. For the following reasons, the court adopts the R&R and denies Williams' motion to suppress.

**I. Background**

On September 8, 2005, Magistrate Judge Gallas issued a search warrant for the residence at 1107 Hoover Place, N.W., in Canton, Ohio. The warrant sought documents and other records relating to suspected drug trafficking activities.

Two years earlier, in March 2003, Special Agent McMurtry had searched Williams' residence at 1107 Hoover Place, with his consent. Aside from that search, which turned up baggies of the type used in cocaine distribution that contained cocaine residue, authorities had seized over $200,000 in cash from Williams in March 2003. Williams admitted that the money belonged to a drug dealer named "Barry," and that he had purchased both marijuana and cocaine from that drug dealer.

Special Agent McMurtry then described information from four different confidential informants. The first informant ("Source 1") provided information in September 2004, indicating that Williams and Source 1 had been involved in cocaine distribution, and that they had purchased multiple kilograms of cocaine on two occasions in the spring of 2003 from an out-of-state supplier. Source 1 also claimed that the money seized from Williams in March 2003 was intended for the purchase of a large quantity of cocaine, and that Source 1 had contributed funds to that endeavor.

The second informant ("Source 2") indicated that Williams and Source 2 had been involved in cocaine distribution in February 2005, and that Williams had delivered cocaine for which Source 2 had paid Williams' cousin. The third informant ("Source 3") indicated in a July 2003 interview that Williams, defendant Malik Knox ("Knox"), Brian Pinkney ("Pinkney") and Sam Jeter ("Jeter") were involved in cocaine distribution. The final informant ("Source 4"), who had testified in court about drug activity in Canton, Ohio, told authorities in September 2004 that Williams was holding cash in reserve because 15 kilograms of cocaine had been seized from Pinkney and Jeter. In May 2005, Source 4 claimed that Williams and Knox were continuing to distribute cocaine in the Canton, Ohio area. Based on this information, Special Agent McMurtry believed that Williams was still involved in drug trafficking activities, and that documentary evidence of those activities could probably be found stored at Williams' residence at 1107 Hoover Place, N.W.

Magistrate Judge Gallas issued a warrant to that effect, authorizing a search of Williams' residence for documentary and other evidence of drug trafficking activity. During execution of the search warrant, authorities discovered quantities of cocaine, marijuana and MDMA (a/k/a "Ecstasy") at Williams' residence. No documentary evidence of a drug trafficking conspiracy appears to have been found, however.

Williams initially argued in his motion to suppress that the information about the presence of drugs or cash supporting the search warrant was "stale" and therefore probable cause was lacking. In his objection to the R&R, Williams now argues that there was insufficient evidence of a drug trafficking conspiracy for the warrant to have been issued.

**II. Discussion**

"[S]o long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). In examining the magistrate's decision, the court must determine whether, under the "totality of the circumstances," such a conclusion is supported by a "substantial basis" and probable cause therefore existed. *United States v. Blair*, 214 F.3d 690, 696 (6th Cir.2000).

Williams' sole objection to the R&R challenges the "substantial basis" of the magistrate's conclusion that evidence of a drug trafficking conspiracy could be found at Williams' residence, 1107 Hoover Place, N.W. Williams notes that none of Special Agent McMurtry's sources discussed 1107 Hoover Place, N.W., and none of those sources claimed to have seen documentary evidence of a drug trafficking conspiracy in Williams' possession. The only information relating to activity at Williams' residence was more than two years old. However, Williams does note, in his objection, that the

informants do suggest that Williams was involved in the sale of drugs. Williams appears to suggest that the warrant to search his residence was based upon nothing more than suspicion of him. Were that the case, the search would not be justified by probable cause. *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought.")

However, the information in the hands of the FBI suggested more than just that Williams was involved in a drug trafficking conspiracy; it suggested that Williams was involved in a such a conspiracy *and* that Williams performed at least some of the acts underlying that conspiracy out of his home, specifically money that was part of a drug trafficking conspiracy and baggies used to distribute cocaine seized from his home in March 2003. The idea that evidence of this sort of crime might be found at a criminal's residence is neither a novel proposition nor is it one unsupported by the facts or the experience of the affiant here. *See, e.g., United States v. Caicedo*, 85 F.3d 1184, 1193 (6th Cir.1996) (upholding a probable cause determination on the basis of facts alleged and the experience of the affiant, who asserted that many drug traffickers utilize their homes in drug trafficking activities). The FBI had information and a reasonable belief that Williams was involved in a conspiracy involving at least some acts at his residence, so the search of Williams' residence was likely to uncover evidence of those acts. *See, e.g., United States v. Graham*, 275 F.3d 490, 503 (6th Cir. 2001). While the affidavit of Special Agent McMurtry could, and probably should, have included more details linking Williams' suspected criminal activity to his residence, which would have created a stronger link between 1107 Hoover Place, N.W. and the suspected drug trafficking conspiracy, the facts presented along with Special Agent McMurtry's experience in these cases is sufficient for the court to uphold Magistrate Judge Gallas'

finding of probable cause. *See, e.g., United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004); *see also United States v. Washington*, 380 F.3d 236, 244 (6th Cir. 2004) ("The majority upholds a search when the underlying affidavit neither connects a searched residence to any illegal activity nor states that a suspect observed engaging in such illicit activity away from the residence actually lives at the searched residence. Because such a warrant is so lacking in probable cause that no reasonable officer could rely on it in executing the search, I respectfully dissent.") (Moore, J., dissenting).

That the investigators found drugs during their search for documents does not force the court to retroactively require probable cause to search for those drugs. The officers found drugs while properly executing a lawful search warrant, and the plain view exception therefore applies. *United States v. Blair*, 214 F.3d 690, 698 (6th Cir. 2000). Nor does the fact that investigators apparently found no documentary evidence of a drug trafficking conspiracy vitiate the probable cause determination by Magistrate Judge Gallas. If anything, what investigators did find at 1107 Hoover Place, N.W., only serves to support the contention that Williams was involved in a drug trafficking conspiracy.

### III. Conclusion

For the foregoing reasons, the court adopts the R&R [Docket No. 43] and Williams' motion to suppress [Docket No. 37] is denied.

IT IS SO ORDERED.

    /s/ Ann Aldrich  
ANN ALDRICH  
UNITED STATES DISTRICT JUDGE

**Dated: December 14, 2005**